# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>RAUL CARDENAS,<br><br>　　　　　Defendant. | Case No. 1:95-CR-05030-LJO-5<br><br>MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER U.S.S.G. AMENDMENT 782<br><br>(Doc. 385) |

Before the Court is the pro se[1] motion of Defendant Raul Cardenas ("Defendant") to reduce his sentence, under Section 1B1.10(b)(1) and Amendment 782 to the United States Sentencing Guidelines ("the Guidelines"),[2] which revised the Drug Quantity Table in § 2D1.1 and reduced by two levels the offense level applicable to many drug trafficking offenses. Doc. 385. Defendant has also submitted a supplemental filing prepared by pro bono counsel[3] in support of his motion. Doc. 391. The Government has opposed Defendant's motion (Doc. 393), and Defendant has replied to the Government's opposition (Doc. 395). Upon a thorough review of the parties' briefing, the record in the case, including the Probation Office's Presentence Report ("PSR"), and the relevant law, the Court denies Defendant's motion.

---

[1] On August 13, 2015, the Office of the Federal Defender filed notice that it did not recommend appointment of counsel to represent Defendant on the instant motion. Doc. 389.
[2] Hereinafter, all references to sections (§) refer to the United States Sentencing Guidelines unless otherwise indicated.
[3] Counsel is not the attorney of record in this case.

**Standard of Review**

A federal sentencing court is authorized to modify an imposed sentence when the relevant sentencing range was lowered subsequent to a defendant's original sentence. 18 U.S.C. § 3582(c)(2) ("§ 3582(c)(2)"); *see United States v. Dunn,* 728 F.3d 1151, 1155 (9th Cir. 2013). Effective November 1, 2014, the Commission promulgated Amendment 782, which generally revised the Drug Quantity Table and chemical quantity tables across drug and chemical types. Amendment 782 is retroactively applicable to previously sentenced defendants. *United States v. Navarro*, 800 F.3d 1104, 1107 (9th Cir. 2015).

However, the district court's authority to modify a sentence is constrained by the Sentencing Commission. *Dillon v. United States,* 560 U.S. 817, 826-27 (2010). A two-step inquiry is required under 18 U.S.C. § 3582(c). *Dunn*, 728 F.3d at 1155 (citing *Dillon*, 560 U.S. at 826-27). "First, a district court must determine whether a prisoner is eligible for a sentence modification under the Commission's policy statement in [§ 1B1.10]." *Id.* If the defendant is eligible, the district court then "consider[s] any applicable [18 U.S.C. § 3553(a)] factors and determine[s] whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* (quoting *Dillon*, 560 U.S. at 827). "[T]he only 'appropriate use' of sentence modification proceedings under section 3582(c) is to adjust a sentence in light of a Guidelines amendment," so courts may not use such proceedings "as a 'full resentencing that reconsiders a sentence based on factors unrelated to a retroactive Guidelines amendment." *United States v. Fox*, 631 F.3d 1128, 1132 (9th Cir. 2011).

**Original Sentence Imposed**

On December 5, 1996, Defendant pleaded guilty to the following offenses: (1) conspiracy to manufacture and distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846; and (2) aiding and abetting the possession with intent to distribute a controlled substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Doc. 223; PSR, at 3.

Defendant's PSR recommended a total offense level of 42. PSR, at 11. For both counts, the applicable guideline was § 2D1.1. *Id*, at 9. Under § 2D1.1, the base offense level is predicated on the amount of drugs involved in the case. According to Department of Justice material weights recorded

on March 15, 1995, the total amount of methamphetamine seized weighed 13.346 kilograms. *Id.*, at 9. A sampling taken from ten packages of the methamphetamine resulted in a 68% purity mean value, which meant that the quantity of pure methamphetamine was 9.076 kilograms. *Id.* Under the 1995 Guidelines, because there were at least 3 kilograms of pure methamphetamine, Defendant's corresponding base offense level was 38. *Id.* Because several firearms, including a fully-loaded assault rifle, a 20-gauge shotgun, and a 9mm semiautomatic handgun, were found in connection with Defendant's offenses, the PSR recommended an additional two-level increase pursuant to § 2D1.1(b)(1). *Id.*, at 9-10. The PSR noted that the Guidelines "do not require that the defendant be in the personal possession of a firearm during the actual drug transaction," but that the adjustment "is to be applied if the firearm was present, unless it is clearly improbable that the firearm was connected with the offense." *Id.*, at 9. Furthermore, because Defendant "had substantial decision making authority as he personally offered to sell multi-pound quantities of methamphetamine on a weekly basis after he established another drug lab site," was "viewed as a leader/organizer within the conspiracy," and was "known to have exercised control over at least one defendant," the PSR recommended an additional two-level increase. *Id.*, at 10. Finally, the PSR noted that Defendant admitted only to negotiating and selling one pound of methamphetamine, but otherwise denied his involvement in the drug conspiracy, which was "in direct conflict to the facts stipulated[4] to in the plea agreement." *Id.* As a result, the PSR did not recommend a reduction for acceptance of responsibility. *Id.* At a total offense level of 42, and with a criminal history category of I, the

---

[4] According to the plea agreement, signed by Defendant on December 3, 1996, Defendant agreed to the following information as facts of this case:

> Beginning on or around January 16, 1995, and continuing until his arrest on January 20, 1995, the defendant, along with others, both named in the indictment and unnamed, were present on the property located at [], in Fresno County. While at the location, the defendant, along with others, manufactured methamphetamine which was transported away on the night of January 18, 1995, by the defendant.
>
> On January 19, 1995, the defendant negotiated to sell 10 pounds [of] the methamphetamine to an undercover agent of the California Bureau of Narcotics Enforcement.
>
> On January 20, 1995, the defendant picked up one pound of the methamphetamine that he had transported to Santa Ana from Fresno. This methamphetamine was stored at a residence located at [], Santa Ana, California. The defendant then met with the undercover BNE agent to conduct a one pound transaction. The defendant was arrested the next morning.

Doc. 222, at 4.

3

guideline range for imprisonment was 360 months to life, and the PSR accordingly recommended a sentence of 360 months of imprisonment. *Id.*, at 14, 16.

On April 7, 1997, the Court adopted the PSR's recommendation and sentenced Defendant to 360 months of imprisonment for both of his offenses, to run concurrently. Docs. 268, 269, 384.

**Application of Amendment**

Amendment 782 modifies the Drug Quantity Table to lower base offense levels by two points for most federal drug offenders. Amendment 782, § 1B1.10. However, the highest base offense level in the drug quantity table, reserved for those convicted of possessing large quantities of controlled substances, remained at 38. Moreover, a reduction in a defendant's term of imprisonment is not authorized under § 3582(c)(2) if Amendment 782 does not have the effect of lowering the defendant's applicable guideline range. *See* § 1.B1.10(a)(2)(B).

In this case, Defendant does not qualify for a sentence reduction because Amendment 782 does not lower the base offense level for defendants whose offenses involved over 4.5 kilograms of actual methamphetamine. *See* §§ 1B1.10, 2D1.1(c). According to the PSR, the amount of actual methamphetamine attributable to Defendant is 9.076 kilograms, which is considerably greater than the minimum amount to subject a defendant to a base offense level of 38, even after Amendment 782's modifications are taken into account.[5] PSR, at 9. As a result, Defendant's base offense level remains at 38. § 2D1.1(c). In conjunction with his criminal history category of I, the two-level increase pursuant to § 2D1.1(b)(1) for the firearms, and the two-level increase under § 3B1.1(c) for his leadership role in the offense, Defendant's total offense level would remain at 42, and the corresponding Guidelines sentencing range is 360 years to life imprisonment, which is the same as the previous range applicable to his case before Amendment 782 took effect. *See* United States Sentencing Commission Guidelines Manual, Sentencing Table (Nov. 1, 2014). Thus, because Defendant's sentence was not "based on a sentencing range that has been subsequently lowered by the Sentencing Commission," as required by § 3582(c)(2), the Court must deny his motion. *United States v. Leniear*, 574 F.3d 668, 673 (9th Cir. 2009).

---

[5] Under §2D1.1's Drug Quantity Table in 1995, only 3 kilograms of actual methamphetamine were required to trigger a base offense level of 38. Following the adoption of Amendment 782, 4.5 kilograms of actual methamphetamine were required to subject a defendant to a base offense level of 38.

4

Defendants' arguments in his brief and his pro bono supplement do not persuade the Court otherwise. As discussed above, § 3582(c)(2) provides for the modification of a term of imprisonment by giving courts the power to reduce an otherwise final sentence only when a defendant's sentence is "based on a sentencing range that has been subsequently lowered by the Sentencing Commission" and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *See Dillon*, 560 U.S. at 825. Through his motion, Defendant contests the amount of actual methamphetamine attributed to him by the PSR, and argues that the information contained therein is not an accurate reflection of his offense. Doc. 385, at 6-8; Doc. 395, at 2. Moreover, Defendant notes that the sampling of the methamphetamine attributed to him resulted in a 68% purity value, which he claims is "short of the 80% purity value needed to establish 'ICE' or pure methamphetamine." Doc. 385, at 7. Defendant urges the Court to re-visit the quantity of controlled substances attributed to him in the PSR, citing *United States v. Davison*, 761 F.3d 683 (7th Cir. 2014), and argues that he is eligible for a two-level reduction under Amendment 782.[6] *Id.*, at 7-8. In *Davison*, the Seventh Circuit reversed and remanded a district court's finding that Davison was responsible for the sale of 16.9 kilograms of crack cocaine, the entire amount of crack cocaine attributed to the conspiracy of which Davison was a member, on the ground that the district court "misunderstood" the "relevant conduct" that formed the basis of the computation of Davison's base offense level. 761 F.3d at 685. The Seventh Circuit further noted that the district court had computed the amount of crack cocaine attributable to Davison based upon what was foreseeable to him, but failed to consider whether Davison had "joined with those other conspirators in a joint undertaking of which the making of those sales was an objective, or had agreed to join in such an undertaking." *Id.*, at 686. In light of the record before it, the Seventh Circuit found that if Davison had joined the conspiracy without agreeing to promote sales by the other gang members, that it was possible that the other gang members' sales of crack cocaine were not "relevant conduct of [Davison's], even if foreseeable." *Id.*

---

[6] On April 28, 2005, Defendant advanced a similar argument in a motion to set aside or correct his sentence pursuant to 28 U.S.C. § 2255, citing *United States v. Booker*, 534 U.S. 220 (2005) and *Blakely v. Washington*, 542 U.S. 296 (2004). Doc. 363. The Court denied this motion on the grounds that *Booker* and *Blakely* were not made retroactively applicable to cases on collateral review. Doc. 364.

5

However, the findings in *Davison* were premised on the fact that the sentencing judge's initial finding about the amount of drugs attributable to Davison was ambiguous. 761 F.3d at 684; *United States v. Davison*, 2014 WL 259037, at *1 (N.D. Ind. Jan. 23, 2014), rev'd 761 F.3d 683 (district court order considering Davison's motion under 18 U.S.C. § 3582(c)(2)). Specifically, Davison's original sentencing judge concluded that he was responsible for "way in excess of" 1.5 kilograms of crack, which at the time of sentencing, was the threshold quantity for the highest base offense level for a federal drug offense. *Id.* Because the Sentencing Commission later raised the threshold amount of crack cocaine for the maximum base offense level, in *Davison*, it was necessary for the district court to recalculate the drug quantity, on account of the original sentencing judge not making the quantity clear in the first instance. *See United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012), overruled on other grounds by *United States v. Taylor*, 778 F.3d 667 (7th Cir 2015) (in adjudicating a § 3582(c)(2) motion, a district court may make new findings "where, as here, retroactive amendments have altered the relevant drug-quantity thresholds for determining a defendant's base offense level" so long as "those findings are not inconsistent with those made at the original sentencing").

For this reason, *Davison* is inapposite to Defendant's case, because here, the sentencing judge made a clear and unambiguous statement adopting the PSR's finding that attributed 9.076 kilograms of actual methamphetamine to Defendant. Doc. 384, at 8-9; *see also* FED. R. CRIM. P. 32(i)(3)(A),(B) (at sentencing, the court "may accept any undisputed portion of the presentence report as a finding of fact; [and] must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute []"). Amendment 782 does not permit the Court to reconsider the volume or purity of drugs attributed to Defendant during his original sentencing proceeding. *See Dillon*, 560 U.S. at 831 (rejecting the arguments that in § 3582(c)(2) proceedings, the district court erred in failing to correct "the *Booker* error that resulted from the initial sentencing court's treatment of the Guidelines as mandatory," and that the court "should have adjusted [the defendant's] criminal-history category, which he now contends was erroneously inflated"). As was the case in *Dillon*, the quantity and purity of methamphetamine attributed to Defendant in the PSR

6

are aspects of his sentence that were "not affected by the Commission's amendment to § 2D1.1," and are accordingly "outside the scope of the proceedings authorized by § 3582(c)(2)." *See id.*

Defendant next argues that the Court should re-evaluate his sentence because the PSR did not recommend a three-level reduction for acceptance of responsibility, as stipulated to in his plea agreement with the Government. Doc. 382, at 8. However, this is another aspect of Defendant's sentence that is beyond the purview of the "narrow bounds established by the Commission" for § 3582(c)(2) proceedings. *See Dillon*, 560 U.S. at 831. The Court further notes that while the plea agreement indicates that the Government agreed to recommend a three-level reduction in the computation of Defendant's offense level, this agreement was conditioned upon Defendant accepting "full responsibility for his conduct." Doc. 222, at 2. As mentioned in the PSR (at 10), and discussed at length during Defendant's sentencing hearing on April 7, 1997 (Doc. 384, at 4-9), the Government expressed its belief that Defendant was not completely forthright with regard to his role in the conspiracy. The Government's position, as reflected in the PSR, was accepted by the Court at sentencing and cannot now be challenged by way of a § 3582(c)(2) motion.

The remainder of Defendant's motion and the entirety of his pro bono supplement concern the application of the factors listed in 18 U.S.C. § 3553(a) to the facts of his case. Doc. 382, at 9-12; Doc. 391. In § 3582(c)(2) proceedings, a court considers the 18 U.S.C. § 3553(a) factors only if a prisoner is eligible for a sentence modification pursuant to the Commission's policy statement in § 1B1.10. *Dunn*, 728 F.3d at 1155. As determined above, Defendant is not eligible for a sentence reduction because his sentence was not based on a sentencing range that was later lowered by the Sentencing Commission. *Leniear*, 574 F.3d at 673. Therefore, because Defendant is statutorily ineligible for a sentence reduction, the Court may not proceed to the second half of the two-part inquiry set forth in *Dillon*. *See Dunn*, 728 F.3d at 1155.

For these reasons, the Court denies Defendant's motion. Nevertheless, although the Court is without authority to reduce Defendant's sentence, the Court commends Defendant for the impressive efforts he has taken towards self-improvement, and his accomplishments while in prison, which include the successful completion of nearly fifteen educational courses, becoming proficient in

English, and earning his GED. The Court's denial of the instant motion is in no way a reflection of Defendant's character, but is a matter of law.

**CONCLUSION AND ORDER**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant Raul Cardenas's motion to reduce his sentence is **DENIED**, pursuant to 18 U.S.C. § 3582(c)(2).

IT IS SO ORDERED.

Dated:  **January 4, 2016**          /s/ Lawrence J. O'Neill
                                     UNITED STATES DISTRICT JUDGE